UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
                                 :

UNITED STATES OF AMERICA       :

                                :

        -v.-                :

                                :      No. S1 11 Cr. 300 (JSR)

CARL KRUGER, RICHARD LIPSKY,   :
AARON MALINSKY, SOLOMON     :
KALISH, ROBERT AQUINO, DAVID  :
ROSEN, WILLIAM BOYLAND, JR., and :
MICHAEL TURANO,          :

                                :

              Defendants.     :
-------------------------------------------------------x

## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT AARON MALINSKY'S MOTION FOR SEVERANCE

HERRICK, FEINSTEIN LLP
Scott E. Mollen
Steven D. Feldman
Justin B. Singer
2 Park Avenue
New York, New York 10016
(212) 592-1400
(212) 592-1500 (fax)

-and-

ANDREW M. LAWLER, P.C.
Andrew M. Lawler
Sharon D. Feldman
641 Lexington Avenue
New York, New York 10022
(212) 832-3160
(212) 832-3158 (fax)

*Attorneys for Defendant Aaron Malinsky*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................ii

I.    Joinder is Impermissible Because the Crimes Charged Are Not the Same..........1

II.   Evidence of Bribery in the Health Care/Adex Conspiracy Would Be
      Inadmissible in a Separate Trial of the Real Estate/Lobbying Conspiracy..........6

CONCLUSION.............................................................................................10

i

## TABLE OF AUTHORITIES

### FEDERAL CASES

*United States v. Awadallah*, 436 F.3d 125, 134 (2d Cir. 2006)...............................10

*United States v. Becker,* 502 F.3d 122, 130 (2d Cir. 2007).....................................10

*United States v. Daugerdas*, 2011 U.S. Dist LEXIS 15753 , No. S3 09 Cr. 581
  (S.D.N.Y. Feb. 16, 2011)...................................................................................7

*United States v. Feyrer*, 333 F.3d 110 (2d Cir. 2003)............................................2

*United States v. Figueroa*, 618 F.2d 934 (2d Cir. 1980).....................................9-10

*United States v. Gilan*, 967 F.2d 776 (2d Cir. 1992)............................................9

*United States v. Jones*, 16 F.3d 487 (2d Cir. 1994)...........................................10

*United States v. Kouzmine*, 921 F. Supp. 1131 (S.D.N.Y. 1996).............................3

*United States v. McDermott*, 245 F.3d 133 (2d Cir. 2001)....................................10

*United States v. Paccione*, 949 F.2d 1183 (2d Cir. 1991).....................................9

*United States v. Rajaratnam*, 2010 WL 4907625, No. 09 Cr. 1184
  (S.D.N.Y. Nov. 24, 2010)..................................................................................1

*United States v. Ramirez*, 894 F.2d 565 (2d Cir. 1990).......................................10

*United States v. Riggi*, 541 F.3d 94 (2d Cir. 2008)...........................................10

*United States v. Rittweger*, 524 F.3d 171 (2d Cir. 2008)..................................2-3, 6

*United States v. Saad*, 380 F. Supp. 2d 286 (S.D.N.Y. 2005)................................3

*United States v. Siegel*, 717 F.2d 9 (2d Cir. 1983)............................................9

*United States v. Stein*, 521 F. Supp. 2d 266 (S.D.N.Y. 2007)...............................7

# FEDERAL RULES

Fed. R. Crim. P. 8(b)...................................................................................1, 5, 6

Fed. R. Evid. 403.......................................................................................7, 9

Fed. R. Evid. 404(b)..............................................................................8. 9

The Government's opposition brief is remarkable for its glossing over the central facts, its selective and misleading use of the cases relied upon by the Government, and its blatant failure to address – much less distinguish – the controlling Second Circuit and Southern District case law cited by Mr. Malinsky. Accordingly, Mr. Malinsky's motion should be granted.

**I.      Joinder is Impermissible Because the Crimes Charged Are Not the Same.**

The Government does not dispute that Counts One, Two, and Ten (the "Real Estate/Lobbying Conspiracy") allege separate and distinct crimes from those charged in Counts Three, Four, and Eleven (the "Health Care/Adex Conspiracy"). Gov't Opp. at 2, 11 & 16. Nor can the Government escape the limitation that Rule 8(b) only permits joinder of two or more defendants "if they are alleged to have participated in the same act or transaction, or . . . series of acts or transactions. . . ." Fed. R. Crim. P. 8(b). Given the limitations of Rule 8(b) and that the separately charged offenses differ in myriad ways, the Government attempts to show these different conspiracies are really the "same series of acts or transactions" by trying to identify similarities creating a "key link" among the various charged offenses. The Government is unable to succeed in its effort.

Most notably, the Government's brief omits any mention of a key factor repeatedly considered by courts in determining whether joinder of defendants charged in separate conspiracies is proper, particularly where no participation is alleged: whether a defendant charged in one scheme had knowledge of the existence of the second conspiracy involving others. See United States v. Rajaratnam, 2010 WL 4907625, No. 09 Cr. 1184, at *4 (S.D.N.Y. Nov. 24, 2010) (stating that knowledge of the other conspiracy is an indicator of whether or not there is a common scheme or purpose). Indeed, the cases emphasized by the Government, but only selectively cited by it, support Mr. Malinsky's position that joinder is improper because of the absence of this "key link" of knowledge of the other alleged schemes. There is absolutely no

allegation that Mr. Malinsky knew of or participated in any way in the unrelated Health Care/Adex Conspiracy.

The Government cites United States v. Feyrer, 333 F.3d 110 (2d Cir. 2003), but leaves out the Second Circuit's focus on each defendant's knowledge of the other's scheme. In Feyrer, Yost and Goldenberg were charged with participating in separate broker bribery schemes to create demand for shares of two separate companies, one controlled by Yost and one by Goldenberg. Both men used brokers at the Symons Financial Group to carry out the scheme. The main proof consisted of the testimony of two men who attended a joint meeting with Yost, Goldenberg, and Symons where they "discussed bribing brokers to buy stocks for their customers in the corporations that Yost and Goldenberg controlled." Id. at 113. In holding that joinder was proper, the Second Circuit stated:

> [T]he schemes were run at the same time and . . . - after participating in the Las Vegas meeting with Feyrer and Wolff - *Yost and Goldenberg were aware of each other's participation in fraud.* Indeed, even if the district court had tried these two defendants separately, the evidence at one trial would essentially duplicate the evidence at the other, as the district court found.

Id. at 114 (emphasis added). On these facts, the Second Circuit determined that joinder was proper. Moreover, in determining that severance was not warranted based on a purported risk of prejudicial spillover and jury confusion, the court noted that:

> Chief Judge Mukasey rejected this argument reasoning that because *each defendant was aware of the manipulation scheme involving the stock of the other's company, and in fact attended the same conspiratorial meeting* in Las Vegas, proof of both schemes would be admissible against both defendants, even at severed trials.

Id. at 115 (emphasis added).

Similarly, the Government cites United States v. Rittweger, 524 F.3d 171 (2d Cir. 2008), but conveniently omits the Second Circuit's critique of the Government for joining two defendants who had no knowledge of the other's unrelated conspiracy. The court stated, "We

2

question the government's decision to try the two conspiracies together. . . . Wexler had no knowledge of or participation in the First Scheme and Brandon had no knowledge of or participation in the Second Scheme." 524 F.3d at 180.[1]

United States v. Saad, 380 F. Supp. 2d 286 (S.D.N.Y. 2005), also cited by the Government, similarly supports Mr. Malinsky's argument. There, Impath executives Adelson and Saad were in some counts individually and in others jointly charged with eleven counts of committing and conspiring to commit securities fraud. Saad, separately charged in Counts 4 and 5 with falsely reporting personal purchases as business expenses and thereby underreporting her compensation in proxy statements, sought to sever the proxy fraud counts from all the other securities fraud counts. This Court declined to sever Counts 4 and 5 because there was a substantial overlap in facts and participants and a common scheme unifying the proxy fraud counts with the other securities fraud counts. Key to this determination, of course, was that "Saad [was] alleged to have participated in both frauds," id. at 288 – that is, she knew of and participated in both the proxy fraud scheme and the securities fraud scheme. Here, by contrast, there is no allegation that Mr. Malinsky knew of the Health Care/Adex Conspiracy, much less participated in it. Saad provides no support for the Government's argument for joinder.

In an attempt to bury Mr. Malinsky's lack of knowledge of the unrelated charged offenses, the Government ignores the cases cited by Mr. Malinsky. It offers no response to Judge Kaplan's decision in United States v. Kouzmine, 921 F. Supp. 1131 (S.D.N.Y. 1996), where severance was granted in part because there was "no evidence that the defendants joined in the indictment were aware of or joined in all of the schemes alleged." 921 F. Supp. at 1133.

---

[1] The Second Circuit nevertheless held post trial that despite its "concern that no connection existed between Brandon and Wexler, and that the connection between the two charged conspiracies was tenuous," the district court's refusal to sever was not an abuse of discretion. 524 F. 3d at 180.

Here, the Government makes no claim that Mr. Malinsky had any knowledge of, or participation in, the Health Care/Adex Conspiracy involving Mr. Kalish, or vice versa. While the Government wiretapped Mr. Kalish's phone and intercepted approximately 3,057 phone calls, not a single call involved or even mentioned Mr. Malinsky. The Government cannot show that Mr. Malinsky had any knowledge of or involvement in any of the charges in the Health Care/Adex Conspiracy, and therefore cannot establish the "key link" necessary to support joinder of these unrelated charges.

Unable to show that Mr. Malinsky was aware of or involved in the Health Care/Adex Conspiracy, the Government instead argues that the various charges are in fact the "same" by emphasizing broad generalities shared by these separate conspiracies. The Government argues (1) that they are alleged to have taken place "during precisely" the same time period, beginning "in or about" 2006 and ending when all of the defendants were simultaneously arrested; (2) that they have two common participants, Sen. Kruger and Dr. Turano, and that the alleged payments were deposited into bank accounts to benefit Sen. Kruger, Dr. Turano, and others; and (3) that they share a common plan or objective – the payment of money to Sen. Kruger that was then laundered through bank accounts in exchange for "official action." Gov't Opp. at 9-10. When subjected to scrutiny, however, the Government's assertions are simply flimsy generalities that are no substitute for the missing knowledge and lack of participation, and do not support joinder.

The Government asserts that the Real Estate/Lobbying Conspiracy involving Mr. Malinsky should be tried in conjunction with the unrelated Health Care/Adex Conspiracy, with which Mr. Malinsky had no involvement, because *inter alia* the alleged crimes "occurred during precisely the same time period . . . from in or about 2006 through and including in or about March 2011." Gov't Opp. at 10. The use of "in or about" surely permits the Government to

4

argue that the scheme began in 2005 or 2007, not "precisely" any time in 2006. Such language provides no basis to tie disparate charges together into one trial.

As the Government's criminal complaint makes clear, there is no allegation that Mr. Malinsky engaged in any criminal conduct in 2006. His company, P/A Associates, is alleged to have first made a relevant payment the following year, in April 2007. Complaint ¶ 28. Rather, the Government urges that these various offenses be put into one trial based on the fact that Dr. Turano allegedly opened a bank account in the name of Olympian Strategic Development Corp. in November 2006. Complaint ¶ 29. There is no allegation that Mr. Malinsky knew of or had any involvement in the opening of this bank account.

The Government also argues that joinder is appropriate because the Real Estate/Lobbying Conspiracy and the Health Care/Adex Conspiracy involve overlapping facts and participants; that is, the different offenses are united by two common participants, Sen. Kruger and Dr. Turano, and payments were allegedly deposited into the same Olympian bank account to benefit Sen. Kruger, Dr. Turano, and others. Gov't Opp. at 10. To the contrary, taken as a whole, this argument shows why the Government has it wrong. Under the Government's theory, any alleged bribery scheme involving Sen. Kruger and Dr. Turano could be tried with any other alleged bribery scheme based simply on the facts that both men were involved, that they deposited the money in their preferred bank account, and that the events took place around the same time. Such "similarities" are not sufficient to meet the policy underlying Rule 8(b).

In practice, this effort to tie unrelated, generically similar offenses into one case is misguided. The Health Care/Adex Conspiracy allegations involve a host of individuals and entities completely unrelated to Mr. Malinsky including Mr. Rosen, Dr. Aquino, Mr. Kalish, and Anthony Seminerio, and corporate entities including the MediSys Health Network, Brookdale Hospital, Parkway Hospital, Caritas Hospital, a company called Adex, and a company described

in the Complaint as a third party hospice care provider.  Complaint ¶¶ 81-87.  The Complaint references various employees at these companies who appear likely to be witnesses at trial. None have any connection to Mr. Malinsky or the allegations against him involving real estate projects.  As the Second Circuit noted in <u>Rittweger</u>, there is a "danger of joining relatively minor participants, who have discrete roles in a larger conspiracy, with the more prominent and active members of overlapping conspiracies."  524 F.3d at 180.

Rule 8(b) prohibits the effort being pursued by the Government here – to claim that unrelated individuals in unconnected industries allegedly involved with bribing the same state senator around the same time period thereby "participated in the same act or transaction, or . . . series of acts or transactions" and should therefore be subjected to one joint trial.  Clearly, much more separates these various defendants and the circumstances with which they were allegedly involved than binds them together.  Joinder is not proper.

## II.    Evidence of Bribery in the Health Care/Adex Conspiracy Would Be Inadmissible in a Separate Trial of the Real Estate/Lobbying Conspiracy.

The Government's argument that Mr. Malinsky's concerns about prejudicial spillover are unwarranted because the evidence of the Health Care/Adex Conspiracy would be admissible even in a separate trial of the Real Estate/Lobbying Conspiracy, Gov't Opp. at 15, is logically flawed and contrary to established Second Circuit precedent with regard to the admissibility of uncharged acts.

First, the Government's completely unsupported assertion that at a separate trial of Messrs. Malinsky and Lipsky, evidence of the Health Care/Adex conspiracy would be direct evidence of the conspiracy with which Mr. Malinsky is charged is simply wrong.  Without citing a single case, the Government maintains that at Mr. Malinsky's separate trial, evidence that payments made by Kalish, Aquino, and others went into the Olympian bank account and were in

fact bribes, would be admissible to prove that the payments from Mr. Malinsky's company to Olympian that were later deposited into the Olympian bank account, were also bribes. The evidence at trial will show that Mr. Malinsky's company, P/A Associates, paid Mr. Turano's company, Olympian, for real estate consulting services pursuant to a written contract, see Reply Declaration of Andrew M. Lawler ¶3, Exh. 1, and that Olympian actually provided services in return for the payments it received. The fact that Olympian may have received payments, and may or may not have provided services, in connection with an entirely separate business relationship in an unrelated industry is simply irrelevant to the charges against Mr. Malinsky.

Moreover, even if the evidence of the Health Care/Adex Conspiracy were arguably relevant to the separate conspiracy charges against Mr. Malinsky, the Government completely ignores the critical next step in the admissibility analysis – nowhere does it address the balancing test of Rule 403. Even relevant evidence should be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Thus, Rule 403 considerations counsel exclusion where the proffered evidence of uncharged acts "risks confusion of the issues and undue delay in a trial that promises to be complex and lengthy"; will "take time" and "is likely to divert the jury's attention from the charged transactions, which are sufficiently complicated in themselves, to another set of complex transactions"; or might "be used for an improper purpose." United States v. Stein, 521 F. Supp. 2d 266, 270-275 (S.D.N.Y. 2007); see also United States v. Daugerdas, 2011 U.S. Dist LEXIS 15733, *6 (S.D.N.Y. Feb. 16, 2011) (excluding evidence of a separate uncharged conspiracy on Rule 403 grounds).

Although the Government maintains that there is overlap in participants, time frames, facts, and purposes across the various schemes here, Gov't Opp. at 17, in fact, as demonstrated in

Point I, *supra,* and as the criminal Complaint makes abundantly clear, the only overlap is the alleged involvement of Sen. Kruger and Dr. Turano. To prove the bribery alleged against the defendants implicated in the three counts relating to the Health Care/Adex Conspiracy, the Government will have to proffer for each of the counts sufficient evidence to establish an agreement; scienter on the part of each of the defendants; the objects of each alleged conspiracy; the official actions allegedly taken by Sen. Kruger to benefit Mr. Kalish, Dr. Aquino, Mr. Rosen, MediSys, and Parkway Hospital; and the overt acts committed in furtherance of the conspiracy – *none of which involve Mr. Malinsky.* The 3,057 intercepted calls on the Kalish wiretap (again, none of which involve Mr. Malinsky) and the documentary evidence and witness interviews described in the criminal Complaint, provide a window into the broad scope of the evidence the Government will seek to introduce to establish the separate conspiracy. Clearly, it will take at least several weeks for the Government to prove the complex interrelated web of allegations relating to the Health Care/Adex Conspiracy, especially given the plethora of evidentiary issues that are likely to arise. The prejudice to Mr. Malinsky from the resulting "trial within a trial" is obvious. The probative value of the evidence, if any, is clearly outweighed by the risk of confusion of issues and delay, and the significant danger that the evidence of Mr. Kruger's involvement in the Health Care/Adex Conspiracy will prevent the jury from making an objective determination as to whether Mr. Malinsky was involved in the Real Estate/Lobbying Conspiracy alleged by the Government.

The Government's additional argument that Mr. Malinsky will not be unduly prejudiced by a joint trial because the Health Care/Adex Conspiracy would be admissible in a trial of the Real Estate/Lobbying conspiracy pursuant to Rule 404(b) to prove Sen. Kruger and Dr. Turano's motive, knowledge, and intent, Gov't Opp. at 16, is equally unavailing. The proffered Rule 404(b) evidence relates to a separate and distinct conspiracy that had nothing to do with Mr.

8

Malinsky and about which he had no knowledge. Even if the evidence were properly admissible for some limited purpose against Sen. Kruger and Dr. Turano, it would not be admissible against Mr. Malinsky. See United States v. Gilan, 967 F.2d 776 (2d Cir. 1992) (holding that court erroneously admitted evidence pursuant to Rule 404(b) because there was no evidence linking defendant to the uncharged act).[2] The factors to be balanced under Rule 403 once again would clearly counsel against the admission of such evidence. As the Second Circuit has emphasized, "'[t]here are few areas in which it is as important for this court to keep a watchful eye as on the admissibility of similar offenses in a case involving more than a single defendant.'" United States v. Figueroa, 618 F.2d 934, 944 (2d Cir. 1980) (citation omitted).

> Evidence that might be admissible under Rule 403 in a trial of one defendant is not inevitably admissible in a joint trial. *In some situations the danger of unfair prejudice to co-defendants may be so great that the prosecution must be put to a*

---

[2] Cases cited by the Government for the proposition that evidence of bribery may be admissible pursuant to Rule 404(b) are inapposite here. In United States v. Siegel, 717 F.2d 9 (2d Cir. 1983), all five defendants were charged with the use of interstate wires in furtherance of a single fraudulent scheme to obtain money and defraud a corporation. The Government offered as evidence a payment from one defendant to another defendant at the direction of a third defendant to show the existence of a secret cash fund utilized by all five defendants in their common scheme. The court found that the evidence was admissible under Rule 404(b) because "if the bribe was connected to the secret cash fund, then the evidence was relevant to show the fund existed, that defendants had at least one reason for accumulating the fund, and that they had knowledge of the fund." Id. at 16. Since all five defendants were alleged to have participated in the same scheme, and proof of the secret fund tended to prove the existence of that scheme, the evidence was fairly admitted. These facts are readily distinguishable from the instant case. Here, there are two separate, unrelated conspiracies, and the proof of one bribe, while sufficient to show the existence of one conspiracy, would not tend to prove the existence of the other. In essence, the Government seeks to use evidence that Sen. Kruger and Dr. Turano used the Olympian bank account to receive bribes from Mr. Kalish to prove that Sen. Kruger and Dr. Turano must have also used the Olympian bank account to receive bribes from Mr. Malinsky. According to the Government's flawed logic, if a check from Mr. Malinsky's company was deposited into the Olympian account, it must have been a bribe. Rule 404(b) does not permit the admission of evidence for this purpose. United States v. Paccione, 949 F.2d 1183 (2d Cir. 1991) is similarly unavailing. There, the Court permitted the admission of evidence that the defendant offered a bribe to government officials as proof of the defendant's guilty mind related to his charge of illegal dumping. Here, the Government would not be seeking to use Mr. Malinsky's act to prove Mr. Malinsky's guilt, but *someone else's* act of bribery in a completely unrelated conspiracy. This, too, is improper under Rule 404(b).

*choice of forgoing either the evidence or the joint trial."*

Id. at 945 (emphasis added).

The Government argues that limiting instructions will address any concerns regarding prejudicial spillover. Gov't Opp. at 18-19. In this case, limiting instructions are not the panacea the Government suggests. The Second Circuit has long held that "limiting instructions cannot be regarded as a guaranty against prejudice." United States v. Figueroa, 618 F.2d 934, 946 (2d Cir. 1980); accord United States v. Awadallah, 436 F.3d 125, 134 (2d Cir. 2006). While courts may presume that jurors adhere to limiting instructions, that presumption "fades when there is an overwhelming probability that the jury will be called upon to perform humanly impossible feats of mental dexterity." United States v. McDermott, 245 F.3d 133, 140 (2d Cir. 2001) (citing United States v. Jones, 16 F.3d 487, 493 (2d Cir. 1994)); see also United States v. Riggi, 541 F.3d 94, 104 (2d Cir. 2008); United States v. Becker, 502 F.3d 122, 130 (2d Cir. 2007).

The limiting instructions that the Government suggests be given before the introduction of the evidence of the Health Care/Adex Conspiracy and when the Court charges the jury, Gov't Opp. at 18-19, will be inadequate to cabin the prejudice to Mr. Malinsky. None of the cases cited by the Government involved, as this one does, the introduction against multiple co-defendants of a mass of evidence relating to a completely separate conspiracy in which the defendant is not alleged to have any participation and of which he was not aware. Also, this is not a case, as in United States v. Ramirez, 894 F.2d 565, 570 (2d Cir. 1990), where the court can specifically instruct the jury not to consider against Mr. Malinsky a single discrete piece of evidence.

## CONCLUSION

For the foregoing reasons and for the reasons set forth in his opening Memorandum of Law, Mr. Malinsky respectfully requests that the Court grant his motion for severance.

10

Dated: New York, New York
       May 11, 2011

                                     Respectfully submitted,

                                    HERRICK, FEINSTEIN LLP

                                    By: /s/  Scott E. Mollen
                                         Scott E. Mollen
                                         Steven D. Feldman
                                         Justin B. Singer
                                         2 Park Avenue
                                         New York, New York 10016
                                         (212) 592-1400
                                         (212) 592-1500 (fax)

                                    -and-

                                    ANDREW M. LAWLER, P.C.

                                    By: /s/ Andrew M. Lawler
                                         Andrew M. Lawler
                                         Sharon D. Feldman
                                         641 Lexington Avenue
                                         New York, New York 10022
                                         (212) 832-3160
                                         (212) 832-3158 (fax)

11