UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                           :

UNITED STATES OF AMERICA         :
                           :

        - v. -          :           S1 11 Cr. 300 (JSR)
                           :

CARL KRUGER,              :
RICHARD LIPSKY,          :
AARON MALINSKY,        :
MICHAEL TURANO,        :
SOLOMON KALISH,        :
ROBERT AQUINO, and      :
WILLIAM BOYLAND, JR.,   :
                           :

        Defendants.     :
                           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## THE UNITED STATES OF AMERICA'S RESPONSE TO THE MOTION TO SEVER SOLOMON KALISH

                                        PREET BHARARA
                                          United States Attorney
                                          Southern District of New York
                                          Attorney for the United States
                                                  of America

GLEN G. McGORTY
WILLIAM J. HARRINGTON
MICHAEL BOSWORTH
Assistant United States Attorneys

     - Of Counsel -

**PRELIMINARY STATEMENT**

The Government respectfully submits this brief in response to the motion to sever defendant Solomon Kalish.  Defendants Carl Kruger, Michael Turano and Robert Aquino seek to sever Kalish so that they can call Kalish as a defense witness.  They rely principally on *United States v. Finkelstein*, 526 F.2d 517 (2d Cir. 1975) for support, as well as on two affidavits from Kalish asserting that if would offer purportedly exculpatory testimony at a separate trial of Kruger, Turano, and Aquino.  For the reasons set forth below, not a single one of the *Finkelstein* factors counsels in favor of severance.  Indeed, they all weigh decisively against it.  Because the defendants cannot overcome the difficult burden of demonstrating sufficient prejudice warranting severance, the motion for severance should be denied.

**RELEVANT BACKGROUND**

Kruger, Turano, Kalish and Aquino are charged together in two counts of the Indictment. Count Two charges these four defendants, among others, with conspiring to commit honest services fraud, in violation of Title 18, United States Code, Section 1349.  Count Three charges these four defendants, among others, with conspiracy to commit bribery and Travel Act bribery, in violation of Title 18, United States Code, Section 371.  Specifically, as relevant to the instant motion, the Indictment alleges that Kruger, while serving as a member of the New York State Senate, and in connection with his official position as a member of the New York State Senate, would and did receive bribes from Kalish, who controlled Adex Management, Inc. ("Adex") and AQUINO, while serving as the Chief Executive Officer of Parkway Hospital.  Indictment ¶ 10. The Indictment further alleges that corrupt payments were directly or indirectly paid, or intended to ultimately be paid to Adex (Kalish's company); the corrupt payments were then disbursed

from Adex to bank accounts established by Turano for the benefit of Kruger, Turano, and others; and that in exchange for receiving these corrupt payments, Kruger would and did undertake action, in connection with his official position as a member of the New York State Senate, to benefit Kalish, Aquino and Aquino's hospital (Parkway Hospital) as opportunities arose. *Id.*

In connection with the pretrial motions filed in this case, Solomon Kalish filed two affidavits. In the original Kalish affidavit dated September 1, 2011 – which was annexed to the Memorandum In Support of a Joint Motion for Severance filed by Carl Kruger on September 7, 2011 – Kalish asserted that if he were tried first and separately, he would offer purportedly exculpatory testimony at the separate and subsequent trial of Kruger, Turano, and Aquino. *See* Defendant Carl Kruger's Memorandum In Support of a Joint Motion for Severance, Exhibit A ("Original Kalish Affidavit") at ¶¶ 4, 8.

Specifically, with respect to Carl Kruger, Kalish stated – in wholly conclusory fashion – that at a separate trial, he would testify that "Peggy Schwartz's testimony to this Court concerning my relationship to Carl Kruger and his alleged financial interest in payments her company, Compassionate Care, was making to my company, Adex, were either false or erroneous." Original Kalish Affidavit ¶ 5. Kalish gave, "[a]s but one example" that he "never told Peggy Schwartz that Carl Kruger was receiving any of the funds Compassionate Care was paying to Adex simply because I knew that was not true." *Id.*

With respect to Robert Aquino, Kalish stated – again in conclusory and generalized fashion – that he "provided and/or coordinated radiology services for Parkway Hospital," where Aquino served as CEO, and that Parkway Hospital paid Adex for these services. Original Kalish Affidavit ¶ 6. Kalish further stated, "I never told Dr. Aquino that Carl Kruger had any interest in

Adex, or that Kruger received any of the money Parkway Hospital paid to Adex for radiology-related services." *Id*.

With respect to Michael Turano, Kalish states – yet again in wholly conclusory fashion – stated that he would testify that "Dr. Turano and his brother Gerard Turano did a substantial amount of work for Adex, and the payments Adex made to their company were for services actually rendered. I am able to detail specific meetings and events to demonstrate the nature, extent and bona fides of the Turanos' consulting work." Original Kalish Affidavit ¶ 7.

Kalish also made clear that he would not testify at a joint trial with Kruger, Turano, and Aquino because "I have concluded that at the trial of all defendants now scheduled to begin in January 2012, it would not be in my interest to testify." Original Kalish Affidavit ¶ 7. Kalish further stated that he would only testify on behalf of Kruger, Turano and Aquino if he were severed from those defendants and if he were tried first. Original Kalish Affidavit ¶ 8 ("If my case were severed from that of Carl Kruger, Michael Turano, and Robert Aquino, I would agree to be tried first, waive my Fifth Amendment privilege, and testify on their behalf at their subsequent trial even if appeals on my behalf were still pending at that time.").

Weeks later, on September 28, 2011, Kalish executed a second affidavit ("Supplementary Kalish Affidavit"). In this affidavit, he reiterated that "I have concluded that at the trial of all defendants now scheduled to begin in January 2012, it would not be in my interest to testify, and that, accordingly, I will not take the witness stand." Supplementary Kalish Affidavit ¶ 2. Kalish explained that the basis for that decision is the one set forth in his counsel's affirmation, namely that counsel for Kalish's co-defendants would attack Kalish as a "liar" at a joint trial. *See id.*, citing Affirmation of Adrian L. DiLuzio at 2-3. Kalish reiterated his desire to testify at his own

trial, Supplementary Kalish Affidavit ¶ 3.  And Kalish withdrew his offer to testify only on the condition that he be tried first, stating "I will testify at the separate trial of Kruger, Turano and Aquino regardless of the order in which this Court directs that separate trials proceed." Supplementary Kalish Affidavit ¶ 4.

## APPLICABLE LAW

The Supreme Court has made clear that "[t]here is a preference in the federal system for joint trials of defendants who are indicted together," because joint trials "promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (quotations and citations omitted); *see also United States* v. *Lord*, 565 F.2d 831, 839 (2d Cir. 1977) ( "Persons accused in one indictment of joint participation in a crime are normally tried together, absent a showing of substantial prejudice, as to which the defendant bears a heavy burden.").  The strong presumption in favor of joint trials can be overcome only where "essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial."  *Zafiro*, 506 U.S. at 539.

A party moving for severance on the ground that a co-defendant will testify for him at a separate trial has a "difficult burden" to meet. *See United States* v. *Finkelstein*, 526 F.2d 517, 525 (2d Cir. 1976).  Under *Finkelstein* and its progeny, several factors must be considered in determining whether a defendant has "overcome the difficult burden of demonstrating sufficient prejudice to have warranted severance," *Finkelstein*, 526 F.2d at 525.  Those factors include (1) the sufficiency of the showing that the co-defendant would testify at a severed trial and waive his Fifth Amendment privilege; (2) the degree to which the exculpatory testimony would be cumulative; (3) the counter arguments of judicial economy; and (4) the likelihood that the

testimony would be subject to substantial, damaging impeachment. *See, e.g.*, *United States v. Ferguson*, 2011WL 3251464 at * 18 (2d Cir. 2011); *Finkelstein*, 526 F.2d at 523-24.

The decision whether to grant severance is committed to the sound discretion of the trial court. *United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003), and the trial court's exercise of that discretion is "virtually unreviewable" on appeal. *United States v. Stewart*, 433 F.3d 273, 314 (2d Cir. 2006).

## ARGUMENT

The joint motion for severance under *Finkelstein* is without merit. <u>First</u>, as set forth in greater detail below, Kalish's offer to testify smacks of bad faith – not simply because he initially offered to testify only on the condition that he be tried first, but because he has not offered a plausible explanation for why he would testify only at a separate trial. And the Second Circuit has disclaimed the propriety of severance in such circumstances. <u>Second</u>, the Kalish affidavit fails to demonstrate that his testimony would in fact be substantially exculpatory. On the contrary, it is replete with the sorts of generalized and conclusory claims of exculpatory testimony that the Second Circuit has deemed inadequate to justify severance. <u>Third</u>, because the entirety of the proof that would be admitted at a separate Kalish trial would have to be presented at a trial of Kruger, Turano and Aquino, considerations of judicial economy militate strongly against severance. <u>Fourth and finally</u>, Kalish would be subject to serious and damaging – indeed withering – impeachment about his credibility and character. On balance, the *Finkelstein* factors counsel decisively against severance and the joint motion should be denied.

1.    Kalish's Offer to Testify Smacks of Bad Faith and
Fails to Satisfy The First *Finkelstein* Factor

The first *Finkelstein* factor – the sufficiency of the showing that the co-defendant would testify – counsels strongly against severance in this case.  Kalish's offer to testify at a joint trial of Kruger, Turano, and Aquino smacks of bad faith, and the Second Circuit has indicated that the first *Finkelstein* factor is not satisfied in such circumstances.

Kalish's impure motivation is revealed by two facts: (1) his initial offer to testify at a separate trial only on the condition that he be tried first; and (2) his inability to offer an adequate explanation as to why he would testify only at a separate trial, and, worse still, his willingness to embrace an explanation that is disingenuous on its face.

The law is well-settled that when a defendant conditions an offer to testify on being tried first, such a conditional offer to testify "smacks of bad faith" and is insufficient to satisfy the showing of a willingness to testify that the first *Finkelstein* factor requires.  *See, e.g., United States v. Spinnelli*, 352 F.3d 48, (2d Cir. 2003) (affirming the denial of a severance motion where a co-defendant offered to testify about a second defendant's innocence but "only if [the second defendant] were tried separately and subsequently," because "conditional offers smack of bad faith"); *United States v. Bari*, 750 F.2d 1169, 1177 (2d Cir. 1984) (explaining that a conditional offer to testify "smacks of bad faith").  In *United States v. Bari*, for example, Craig Daniel, a defendant provided the district court with affidavits from four co-defendants stating they would testify at Daniel's trial and provide exculpatory testimony, but only if they were tried before Daniel.  Even though the co-defendants had submitted affidavits to the district court, the Second Circuit thought it "unlikely that Daniel's co-defendants would actually testify at a separate trial,"

because the "offers to testify were expressly conditioned on being tried last, a condition which smacks of bad faith." *Id*. Further, the Second Circuit noted that the "none of the [co-]defendants pled guilty" – which the Second Circuit took as a further indication that the co-defendants "were unlikely to waive the privilege against self-incrimination at a separate trial unless they already been acquitted." *Id*.

Precisely because conditional offers to testify smack of "bad faith" and are insufficient to satisfy the first *Finkelstein* factor, for nearly three decades courts in this District have repeatedly denied severance in the face of a conditional offer to testify. *See, e.g., United States v. Shipp*, 578 F. Supp. 980, 997 (D.C.N.Y. 1984) (Weinfeld, J.) (denying severance, *inter alia*, and citing "the rule that ... a showing of willingness to testify if there is severance is not met when that offer to testify is further conditioned on the co-defendant's case being tried first" (quotation and citation omitted)); *United States v. Bennett*, 1989 WL 140298, at *1 (S.D.N.Y. 1989) (Wood, J.) (same); *United States v. Yong Wang*, 1998 WL 898332 at *2, n.2 (S.D.N.Y. 1998) (Batts, J.) (denying severance because, citing *Bari*, "a co-defendant's offer to testify on behalf of a movant, on the condition that the movant be tried last, is a condition which smacks of bad faith" (quotation omitted)); *United States v. Gardell*, 2001 WL 1135948, at *9 (S.D.N.Y. 2001) (Pauley, J.) (denying severance where a co-defendant's willingness to testify was "conditioned on his case being tried first" because, citing *Parodi*, "the requirement of a showing of willingness to testify if there is a severance is not met when that offer to testify is further conditioned on the co-defendant's case being tried first"(quotation and citation omitted)); *United States v. Ozsusamlar*, 2006 WL 587383, at * 2 (S.D.N.Y. 2006) (Cote, J.) (denying severance because, in light of *Spinnelli,* "Even where a co-defendant has provided an affidavit stating that he would

provide exculpatory testimony if his trial was completed before the movant's trial, the imposition of such a condition smacks of bad faith" (quotation omitted)).

In this case, Kalish initially made precisely the sort of conditional offer to testify that the law of this Circuit rejects as a bad faith offer insufficient to satisfy the first *Finkelstein* factor. *See* Original Kalish Affidavit ¶8 ( Kalish states, "If my case were severed from that of Carl Kruger, Michael Turano, and Robert Aquino, *I would agree to be tried first*, waive my Fifth Amendment privilege, and *testify on their behalf at their subsequent trial* even if appeals on my behalf were still pending at that time." Kalish Affidavit(emphasis added).  To be sure, Kalish ultimately withdrew the conditional offer in the supplemental affidavit he filed, and he agreed to testify at a trial of Kruger, Turano, and Aquino even if their joint trial came before his own.  But the fact that Kalish initially predicated his offer to testify on the condition that he be tried first is an indication of the impure motivation behind his request for severance.

Additionally, and more importantly, in neither affidavit has Kalish offered a plausible explanation for why he would testify *only* at a separate trial.  *See, e.g.*, *Bari*, 750 F.2d at 1177 (affirming the denial of severance where two non-defendant inmates offered to testify at a severed trial but failed to offer "a plausible explanation of why they would testify only at a separate trial").  Worse still, the explanation that Kalish has proffered is disingenuous on its face. In his supplemental affidavit, Kalish suggests that the reasons he would not testify at a joint trial with Kruger, Turano and Aquino are the reasons set forth in his counsel's affirmation.  See Supplementary Kalish Affidavit ¶ 2.  Counsel's affirmation suggested, in turn, that Kalish's co-defendants may pursue lines of examination that "involve painting a picture of Mr. Kalish as a liar in certain respects," for example, in regards to "the false information upon which Ms.

[Peggy] Schwartz relied in her testimony [at the David Rosen trial]." Affirmation of Adrian L. DiLuzio at ¶ 3.

The notion that Kalish's co-defendants will seek to impeach him on any matters of significance is nonsensical.  For one thing, there is not a single statement in either of Kalish's affidavits that his co-defendants even conceivably may want to impeach.  Kalish makes no statement seeking to shift the blame to his co-defendants, nor does he make any statement that may seem to inculpate a co-defendant but that he has suggested he is in a position to explain away.  On the contrary, all the statements in the Kalish affidavits are – at least according to Kalish – exculpatory for Kalish and his co-defendants alike.  Affirmation of Adrian L. DiLuzio at ¶ 3 (explaining that Kalish's testimony, "if believed, will not only exculpate himself entirely but, as set forth in particular in detail in the affirmation of Mr. Brafman on behalf of [C]arl Kruger, will also tend to exculpate Kruger, Turano and Aquino in important respects as that testimony may bear upon the allegations against them").   Furthermore, even with respect to the testimony of Peggy Schwartz, neither Kalish nor his counsel has suggested that Kalish provided any "false information" to Peggy Schwartz.  Kalish states simply that he would testify that the testimony of Peggy Schwartz was itself "false or erroneous."  Thus, there is no reason to believe counsel for Kruger or any other counsel would seek to impeach Kalish or portray him as a liar.  Indeed, there is every reason to believe that Kalish, Kruger, Turano and Aquino would share an interest in totally embracing Kalish's testimony.  After all, Kalish's testimony would – as the four defendants have suggested by joining together in this motion for severance – be exculpatory for all four defendants (at least according to them).

Given that Kalish has not identified a single statement that his co-defendants may seek to

impeach, given that all four defendants have an incentive to and interest in embracing Kalish's

testimony as truthful and exculpatory, given that Kalish himself has not suggested that he would

inculpate himself in any regard by testifying at a Kruger/Turano/Aquino trial, there is utterly no

justification for Kalish's offer to testify only at a trial of Kruger, Turano and Aquino that is

separate and apart from his own trial.  Kalish's offer to provide exculpatory testimony only at a

separate trial is disingenuous on its face, it smacks of bad faith, and it provides the Court with

ample reason to question the likelihood that Kalish would, in fact, waive his Fifth Amendment

privilege and testify at a separate trial of Kruger, Turano, and Aquino, particularly if their trial

came before his own.

> 2.      The Kalish Affidavit Fails To Demonstrate He Will Offer Significant Non-
>           Cumulative and Exculpatory Testimony

With respect to the second *Finkelstein* factor – the degree to which the exculpatory

testimony would be cumulative – Kalish has made only the most general and conclusory claims

about the exculpatory nature of his testimony.  Furthermore, his affidavit fails to establish that his

testimony would, in fact, be *substantially* exculpatory.  As a result, the second *Finkelstein* factor,

like the first, weighs against severance.

It is well-settled that, to prevail on a *Finkelstein* severance motion, a defendant must offer

more than generalized, conclusory promises about the exculpatory nature of his testimony.  *See,*

*e.g., United States v. Attanasio,* 970 F.2d 809 (2d Cir. 1989) (affirming the denial of severance

where the affidavit "contained only conclusory statements as to the exculpatory nature of [co-

defendant's] testimony" (quotation omitted); *Bari,* 750 F.2d at 1189 (explaining that the "burden

of demonstrating prejudice is not satisfied by wholly conclusory statements merely labeling the

proffered testimony as exculpatory"); *United States v. Ozsusamlar*, 2006 WL 587383, at * 2 (S.D.N.Y. 2006) (Cote, J.) (denying severance because, *inter alia*, "there has been only the most conclusory, general description by counsel of the kind of information he believes that [the co-defendant] might provide"); *United States v. Jackson,* 2005 WL 3046290, at *2 (S.D.N.Y. 2005) (McKenna, J.) (denying severance and explaining that the movant "must also detail the allegedly exculpatory testimony"); *United States v. Gardell*, 2001 WL 1135948, at *9 (S.D.N.Y. 2001) (Pauley, J.) (denying severance because, inter alia, "apart from conclusory assertions, [the defendant] does not establish that [the co-defendant's] anticipated testimony would be exculpatory").

Furthermore, the law is clear that a defendant must establish that a co-defendant's testimony would in fact be "substantially exculpatory."  *United States v. Freedman*, 2008 WL 731442, at *26 (2d Cir. 2008); *United States v. Ford*, 870 F.2d 729, 732 (D.C. Cir. 1989) (explaining that to prevail on a motion for severance to secure the testimony of a co-defendant, "the showing must be sufficiently definite in nature to allow the court reasonably to conclude that the testimony would in fact be 'substantially exculpatory'"); *United States v. DeLuna*, 763 F.2d 897, 920 (8th Cir. 1985) ("the defendant must show that the co-defendant's testimony would be substantially exculpatory"); *United States v. Espinosa*, 771 F.2d 1382, 1408 (10th Cir. 1985) ("the defendant must show that more than a vague and conclusory statement ... of ... negligible weight or probative value") (quotations omitted); *United States v. Parodi*, 703 F.2d 768, 780 (4th Cir. 1983) (holding that the showing "must be sufficiently definite for a determination by the trial court of the testimony's exculpatory nature and effect").

Here, Kalish's affidavit is devoid of detail and replete with conclusory and generalized

11

claims about the exculpatory nature of his testimony.  As such, he utterly fails to carry his burden of proving that his testimony would be substantially exculpatory.

With respect to Kruger, Kalish states – in wholly conclusory fashion – that at a separate trial, he would testify that Peggy Schwartz's testimony was "false or erroneous" and gives, "[a]s but one example" that he "never told Peggy Schwartz that Carl Kruger was receiving any of the funds Compassionate Care was paying to Adex simply because I knew that was not true."  Kalish Affidavit ¶ 5.  Nowhere does Kalish suggest what affirmative facts he would establish through his testimony.  Nowhere does Kalish explain how his relationship with Peggy Schwartz and Compassionate Care developed, how Kruger came to be involved in the enterprise of getting Compassionate Care business, how the Turanos came to be involved in Adex's business, or what specifically the Turanos did to justify the hundreds of thousands of dollars he paid the Turanos' shell company, Olympian Strategic Development Corp.  Nowhere, in other words, does Kalish proffer testimony that will actually and affirmatively *exculpate* Kruger.   Even with respect to Peggy Schwartz, Kalish does not proffer any sufficient details.  He makes only a vague promise to contradict Peggy Schwartz's testimony, but offers only one example: he will deny telling Peggy Schwartz that Kruger was receiving money from the funds Compassionate Care paid to Adex.  Even providing that detail is insufficient as a matter of law. *See Parodi*, 703 F.2d at 780 (explaining that severance is not appropriate where a co-defendant offers to provide testimony "which 'merely contradicts part of the Government's proof").

With respect to Aquino, Kalish states that he provided and/or coordinated radiology services for Parkway Hospital (where Aquino served as CEO) and that Parkway Hospital paid Adex for these services.  Kalish Affidavit ¶ 6.  Kalish further states, "I never told Dr. Aquino that

12

Carl Kruger had any interest in Adex, or that Kruger received any of the money Parkway Hospital paid to Adex for radiology-related services." *Id*. Nowhere does Kalish explain when or why he came to provide these purported radiology-related services to Parkway Hospital; whether Carl Kruger had any involvement in brokering the relationship between Adex and Parkway Hospital; what role the Turanos – two gynecologists – played in the provision of radiology-related services to Parkway Hospital in exchange for receiving half of the money that Parkway Hospital paid Adex in the summer of 2008; or why Adex began receiving money from Parkway Hospital during precisely the same period of time that Kruger began lobbying State officials and other hospital executives to include Parkway Hospital in plans to take over the Caritas Hospitals. Further, to the extent that Kalish claims he never told Dr. Aquino that Carl Kruger had any interest in Adex, this proffer is meaningless and, in any event, of negligible exculpatory value. Kalish did not have to expressly tell Aquino that Kruger had an interest in Adex in order for Aquino to understand that Kruger would undertake official action to help Aquino and Parkway Hospital in exchange for Parkway Hospital's hiring Adex. This fact obviously could have been (and according to the Government was) made plain by the circumstances. And indeed Aquino himself admitted to the FBI that he "suspected" that Kalish was giving Kruger a share of the monthly fees that Parkway Hospital paid to Adex.

With respect to Michael Turano, Kalish states that he would testify that "Dr. Turano and his brother Gerard Turano did a substantial amount of work for Adex, and the payments Adex made to their company were for services actually rendered. I am able to detail specific meetings and events to demonstrate the nature, extent and bona fides of the Turanos' consulting work." Kalish Affidavit ¶ 7. This conclusory assertion is meaningless. Kalish does not bother to

13

describe the "substantial amount of work" the Turanos allegedly did, he does not describe a single one of the meetings he allegedly had with the Turanos, and he is silent on the role that Kruger may have played at those meetings. Given that the testimony of multiple witnesses – and recordings – will establish that even where the Turanos attended meetings with their "clients" they usually did so with Kruger and that Kruger did the majority of the talking, the mere fact that the Turanos may have attended meetings with Kalish is meaningless. It is also notable that although Kalish claims the Turanos did substantial work for Adex, Adex – which received a grand jury subpoena – has produced few documents reflecting the work the Turanos allegedly did.

Given that Kalish has failed to establish, with particularity, that his testimony would be substantially exculpatory, the second *Finkelstein* factor counsels against severance.

3.    Considerations of Judicial Economy Militate Significantly Against Severance

The third *Finkelstein* factor – arguments of judicial economy – also weighs decisively against severance. Kalish, Kruger, Turano and Aquino are charged with participating in the very same conspiracy, i.e., the conspiracy to bribe Kruger that is charged in Count Three and then (under different legal theories) in Count Four of the Indictment. Were Kalish to be tried separately, the *entirety* of the evidence presented at his trial would have to be presented again at a subsequent trial of Kruger, Turano, and Aquino. The Government anticipates that at a separate Kalish trial, it would call more than ten witnesses, introduce numerous calls intercepted pursuant to judicially authorized wiretaps, and produce voluminous documentary evidence including bank records and business records of Adex Management, among other evidence. Presenting this quantum of evidence twice would impose a substantial burden on the Court, on the Government,

14

and on the Government's witnesses - some of whom, because they also were called at the Rosen trial, would be faced with the prospect of having to testify three times about the same matters in the same case. This hardly safeguards judicial economy – which merits "serious consideration" according to *Finkelstein*. *Finkelstein*, 526 F.2d at 524. Given the need to "promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts," *Zafiro v. United States*, 506 U.S. 534, 537 (1993)(quotation and citation omitted), and given *Finkelstein*'s own stated concern about squandering "scarce and overburdened judicial resources," the third *Finkelstein* factor weighs strongly against severance.

       4.       <u>The Likelihood of Substantial Impeachment of Kalish's Credibility and Character Counsels Forcefully Against Severance</u>

The fourth *Finkelstein* factor – the likelihood that Kalish's testimony would be subject to substantial, damaging impeachment – also militates forcefully against severance. For one thing, to the extent Kalish suggests the Turanos did legitimate work to earn the money they received from Adex, Kalish will be confronted with an array of evidence that contradicts such testimony, including calls intercepted on his phone; recordings of threatening calls he made to Adex clients; calls intercepted on Kruger's phone (including one call in which Kruger referred to the Turanos' consulting business as "my work"). He will also be cross-examined about events and meetings described by multiple witnesses – including multiple witnesses other than Peggy Schwartz – all of which witnesses will testify that from their meetings with Kruger, Kalish and the Turanos, they understood that Kruger would undertake official action to help them in exchange for hiring Adex. These witnesses will also testify that they suspected that Kruger had an interest in the monies paid to Adex. Thus to the extent Kalish harps on how his testimony will undermine the

testimony of Peggy Schwartz, it is important to bear in mind that Schwartz will be one of a number of witnesses who will place Kalish squarely in the middle of a bribery conspiracy involving Kruger, Turano and Aquino.

It also bears noting that the Government would seek to cross-examine Kalish about his character, including his admiration for the Jewish mafia, his decision to nickname himself after a member of the Jewish mafia, and certain other matters Kalish discussed in conversations intercepted pursuant to the wiretap on his phone.  All in all, should he choose to testify, Kalish would likely be subjected to substantial, damaging – indeed withering – cross-examination concerning his credibility and character.

## CONCLUSION

For all the above reasons, the Government respectfully submits that the motion to sever Kalish be denied.


Dated:  New York, New York
        October 5, 2011

                            Respectfully submitted,

                            PREET BHARARA
                            United States Attorney
                            Southern District of New York


            By:     _____/s/_____
                    Glen McGorty/William Harrington/Michael Bosworth
                    Assistant United States Attorneys
                    (212) 637-2505/2331/1079


16

## CERTIFICATE OF SERVICE

On October 5, 2011, I served one copy of the Government's Response to the

Defendants' Pre-Trial Motions by electronic mail on the following:

| | |
|---|---|
| **Benjamin Brafman, Esq.**<br>**Counsel for Carl Kruger**<br>Brafman & Associates, P.C.<br>767 Third Avenue, 26th Floor<br>New York, NY 10017<br>(212) 750-7800/(212) 750-3906 (fax) | **Gerald B. Lefcourt, Esq.**<br>**Counsel for Richard Lipsky**<br>Gerald B. Lefcourt, P.C.<br>148 E. 78th Street<br>New York, New York 10075<br>212-737-0400/212-988-6192 (fax) |
| **Andrew Lawler, Esq.**<br>**Counsel for Aaron Malinsky**<br>Andrew M. Lawler, P.C<br>641 Lexington Avenue, 27th Floor<br>New York, NY 10022<br>(212)832-3160/(212)832-3158 (fax) | **Robert Katzberg, Esq.**<br>**Counsel for Michael Turano**<br>Kaplan & Katzberg<br>767 Third Avenue, 26th Floor<br>New York, NY 10017<br>(212) 750-3100/(212) 750 8628 (fax) |
| **Richard H. Rosenberg, Esq.**<br>**Counsel for William Boyland, Jr.**<br>217 Broadway, Suite 707<br>New York, NY 10007<br>(212) 586-3838/(212) 962-5037 (fax) | **Adrian L. Diluzio, Esq.**<br>**Counsel for Solomon Kalish**<br>Law Firm of Adrian L. Diluzio<br>200 Old Country Rd., Suite 590<br>Mineola, NY 11501<br>(516) 248-8930/(516) 248-8281 (fax) |
| **Peter Pope, Esq./Andrew Weissmann, Esq.**<br>**Counsel for Robert Aquino**<br>Jenner & Block LLP (NYC)<br>919 Third Avenue, 37th Floor<br>New York, NY 10022<br>(212) 891-1650/1605/(212) 891-1699 (fax) | |

I declare under penalty of perjury that the foregoing is true and correct.  28 U.S.C. § 1746.

Dated:  New York, New York
        October 5, 2011

_____/s/_____
Glen G. McGorty/William J. Harrington/Michael Bosworth
Assistant United States Attorneys
(212) 637-2505/2331/1079