UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK


------------------------------------X
                                    :
UNITED STATES OF AMERICA,           :   11-MJ-00648
                                    :
              v.                    :
                                    :   500 Pearl Street
CARL KRUGER, *et al.*,              :   New York, New York
                                    :
                      Defendants.   :   March 10, 2011
------------------------------------X


          TRANSCRIPT CRIMINAL CAUSE FOR BAIL HEARING
          BEFORE THE HONORABLE KEVIN NATHANIEL FOX
               UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For the Government:        GLEN MCCORTY, ESQ., AUSA
                           WILLIAM HARRINGTON, ESQ., AUSA
                           MICHAEL BOSWORTH, ESQ., AUSA

For Defendant Kruger:      BENJAMIN BRAFMAN, ESQ.

For Defendant Lipsky:      GERALD LEFCOURT, ESQ.
                           FAITH FRIEDMAN, ESQ.

For Defendant Lewinsky:    STEVEN FELDMAN, ESQ.

For Defendant Kalish:      ADRIAN DELUZIO, ESQ.

For Defendant Aquino:      ALLISON PASSER, ESQ.
                           SABRINA SHROFF, ESQ.
                           Federal Defenders

For Defendant Rosen:       ROBERT MORVELLO, ESQ.

For Defendant Boyland:     EDWIN WILFORD, ESQ.

                      (Appearances continue on next page.)




Proceedings recorded by electronic sound recording,
transcript produced by transcription service

2

APPEARANCES:

For Defendant Turano:    ROBERT KATZBERG, ESQ.


Court Transcriber:    RUTH ANN HAGER
                      TypeWrite Word Processing Service
                      211 N. Milton Road
                      Saratoga Springs, New York  12866

3

THE CLERK:  This is case number 11-MJ-00648, United States v. Carl Kruger, Richard Lipsky, Terrance Molinsky [Ph.], Solomon Taylor [Ph.], Robert Aquino, David Rosen, William Boyland, Jr., and Michael Sorono [Ph.].

Would the attorneys please state their names for the record, please?

MR. MCGORTY:  Good afternoon, Your Honor.  Glen McGorty for the United States.  With me at counsel table are AUSAs William Harrington and Michael Bosworth.

MR. HARRINGTON:  Good afternoon.

MR. BOSWORTH:  Good afternoon, Your Honor.

MR. BRAFMAN:  Good afternoon, Your Honor.  For the defendant Carl Kruger, Benjamin Brafman.  Good afternoon.

THE COURT:  Good afternoon.

MR. LEFCOURT:  Your Honor, Gerald Lefcourt [Ph.] and Faith Friedman [Ph.] for the defendant Lipsky [Ph.].

THE COURT:  Good afternoon.

MR. FELDMAN:  Good afternoon, Your Honor.  Steven Feldman and Scott [indiscernible], LLP, for the defendant Aaron Lewinsky [Ph.].

THE COURT:  Good afternoon.

MR. DELUZIO:  Good afternoon, Your Honor.  Adrian Deluzio [Ph.] for the defendants Solomon [indiscernible].

THE COURT:  Good afternoon.

MS. PASSER:  Good afternoon, Your Honor.  Allison

4

Passer [Ph.] and Sabrina Shroff for the Federal Defenders for Robert Aquino [Ph.].

THE COURT:  Good afternoon.

MR. MORVELLO:  Good afternoon, Your Honor.  Robert Morvello [Ph.] for the defendant David Rosen.

THE COURT:  Good afternoon.

MR. WILFORD:  Good afternoon, Your Honor.  Edwin Wilford [Ph.] for Assemblyman Boyland.

THE COURT:  Good afternoon.

MR. KATZBERG:  Good afternoon, Your Honor.  Robert Katzberg [Ph.] on behalf of Mr. Turano.

THE COURT:  Good afternoon.

[Pause in the proceedings.]

May I have the date and time of arrest for Mr. Kruger?

MR. MCGORTY:  Your Honor, starting at the top, Senator Kruger was arrested -- or I'm sorry, self-surrendered this morning at approximately 8:30 a.m.  Should I continue now with the rest, Your Honor?

THE COURT:  Just one moment, please.  Let's turn to Mr. Lipsky.

MR. MCGORTY:  Mr. Lipsky self-surrendered at approximately 8:30 this morning.

THE COURT:  Mr. Lewinsky.

MR. MCGORTY:  Also, Your Honor, surrendered at 8:30 this morning.

5

THE COURT:  Mr. Deluzio.

MR. MCGORTY:  Who represented --

THE COURT:  I'm sorry.

MR. MCGORTY:  -- Mr. Kalish self-surrendered at 8:30 this morning.

THE COURT:  Beg your pardon.  It's Kalish.

MR. MCGORTY:  I think don't think Mr. Deluzio self-surrendered, as far as I know.

MR. DELUZIO:  Not yet.

THE COURT:  8:30?

MR. MCGORTY:  Yes, Your Honor.

THE COURT:  Thank you.  Mr. Aquino?

MR. MCGORTY:  Was arrested this morning at approximately 6:00 a.m.

THE COURT:  Mr. Rosen.

MR. MCGORTY:  Self-surrendered this morning at 8:30.

THE COURT:  Mr. Boyland?

MR. MCGORTY:  Self-surrendered this morning, Your Honor, at approximately 9:30 a.m.

THE COURT:  Mr. Turano?

MR. MCGORTY:  Self-surrendered at approximately 8:30.

THE COURT:  Mr. Kruger, Lipsky, Lewinsky, Kalish, Aquino, Rosen, Boyland and Turano, the purpose of the proceeding is to advise each of you certain rights that you

6

have and to inform of you of the charge made against you, to consider whether counsel should be appointed for any of you, and to determine under what conditions if any each of you might be released.  Do each of you understand?

THE DEFENDANTS:  Yes.

THE COURT:  Each of you has a right to be released either conditionally or unconditionally pending trial unless I find there are no conditions that can reasonably assure your presence at court and the safety of the community.  Each of you has a right to be represented by counsel during all court proceedings and during all questioning by authorities.  If you've made statements to authorities already, you need not make additional statements.  Anything that you do say can be used against you.  Each of you understand?

THE DEFENDANTS:  Yes.

THE COURT:  Mr. Brafman, have you received a copy of the complaint?

MR. BRAFMAN:  Yes, sir.  And I have discussed it thoroughly with my client and I waive a public reading.

THE COURT:  Mr. Lefcourt, have you received a copy of the complaint?

MR. LEFCOURT:  I have, Your Honor, and I have discussed it with Mr. Lipsky and I also waive a public reading.

THE COURT:  Mr. Mullen [Ph.], have you received a

7

copy of the complaint?

MR. FELDMAN:  Your Honor, Mr. Feldman and Mr. Mullen for Mr. Lewinsky, we did receive a copy of the complaint.  We reviewed it with Mr. Lewinsky and [inaudible].

THE COURT:  Mr. Deluzio, have you received a copy of the complaint?

MR. DELUZIO:  Yes, I have, Your Honor.  I've gone over it throughly with Mr. Kalish, and we would waive a public reading at this time.

THE COURT:  Ms. Shroff, have you received a copy of the complaint?

MS. SHROFF:  I have, Your Honor.  Along with Ms. Passer I reviewed it with our client and we waive the public reading.

THE COURT:  Mr. Morvello, have you received a copy of the complaint?

MR. MORVELLO:  I have, Your Honor.  We've gone over it with my client, Mr. Rosen, and we waive public reading.

THE COURT:  Mr. Wilford, have you received a copy of the complaint?

MR. WILFORD:  Yes, I have, Your Honor.  I've reviewed it with Assemblyman Boyland and waive any public reading.

THE COURT:  Mr. Katzberg, have you received a copy of the complaint?

8

MR. KATZBERG:  Yes, I have, Your Honor.  I have reviewed it with Mr. Turano and we too would waive public reading.

THE COURT:  Mr. Aquino, I have before me a document which is labeled financial affidavit, which I will show you now.  Do you recognize the document?

MR. AQUINO:  Yes, Your Honor.

THE COURT:  Would you raise your right hand, please? Do you swear or affirm that the statements contained in this financial affidavit are true statements and that your true signature appears at the bottom of the affidavit?

MR. AQUINO:  Yes, Your Honor.

THE COURT:  Thank you.  I'm going to appoint Ms. Shroff to represent you.  The information you've provided through the affidavit convinces me that you're without the means to retain counsel.

Each of the defendants other than Mr. Aquino is here today with retained counsel.  Is that correct?

THE DEFENDANTS:  Yes, correct.

THE COURT:  Should your circumstances change -- your individual circumstances change and you're no longer able to retain counsel, you should advise the Court so that counsel can be appointed to represent you.

Each of you has a right to have a preliminary hearing held in connection with the charge that is outlined in

9

the complaint.  At that hearing the Government would have the burden of establishing that there's probable cause to believe that a crime has been committed as described in the complaint and that you committed it.  If probable cause is not established, you'll be released from the charge.  If it is established, the Government will have the right to proceed to trial against you.  If you are in custody, the hearing will be held within 14 days; if you're at liberty the hearing will be held within 21 days.  No hearing will be held before the date on which it is scheduled.  You're either indicted by a grand jury or an information is filed against you by the Government. I'll fix a hearing date for each of you after we address the issue of bail.

Have all parties received copies of the respective Pretrial Services report?

PARTIES:  Yes, Your Honor.

THE COURT:  Let me begin with Mr. Kruger.  What is the Government's position on bail with respect to him?

MR. MCGORTY:  Your Honor, I've spoken with Mr. Brafman and we've a package that we can propose to the Court.  Your Honor, we would propose that Senator Kruger be released pursuant to a one million-dollar personal recognizance bond today on his own signature to be co-signed by two financially responsible co-signers by the end of next week, which would be March 18, 2011; routine Pretrial

10

supervision; travel restricted to the -- to all four districts of New York, so the Northern, Western, Eastern, and Southern Districts of New York, the district of New Jersey and the district of Connecticut; surrender of all travel documents and no new applications.  Oh, and the Eastern District of Pennsylvania, Your Honor.

THE COURT:  Mr. Brafman, does that recitation comport with your recollection of your discussions with Mr. McGorty?

MR. BRAFMAN:  Yes, Your Honor.

THE COURT:  Why do the parties believe these are the least restrictive bail conditions?

MR. MCGORTY:  Well, Your Honor, I could argue from the Government's position the case as laid out and set forth in the complaint is quite strong against Senator Kruger.  We have been monitoring his phones for the past four months.  We have intercepted him having conversations which we believe indicate his intent to continue pursuing what we believe is a corrupt relationship with a number of individuals which are outlined in the complaint.  We believe the evidence against Senator Kruger is overwhelming that he has participated in that relationship since 2006 up to the present date.

I could outline the proof.  We believe that these conditions would assure the Defendant would return to court as scheduled and that he would not be risk of flight if these

conditions were put in place.

Your Honor, we've also reviewed the penalties in this case, reviewed the guidelines. And by the Government's current calculations based on what we're aware of in this case, Senator Kruger faces a uni-sentencing guidelines calculation of life based on his guidelines calculation if it proceeded to trial and if the Government pursued all the arguments available to it based on those enhancements.

MR. BRAFMAN: Your Honor.

THE COURT: Yes, sir.

MR. BRAFMAN: If I may, I note we intend to actually try the case during this proceeding. We obviously take a very different view of the evidence. I've read the complaint. With respect to Mr. Kruger's willingness to come back to court and his understanding of his responsibility to come back to court, we know of the Government's investigation to submit in a period of time. Many months ago I spoke and met with the Assistant United States Attorney who was handling the case. From time to time I've been in contact with that office. Yesterday when we were discussing the fact that Senator Kruger would be required to answer some charges, they agreed that he would not be a risk of flight, and made -- did surrender this morning. We did last night in order to assist in the execution of a warrant. We were instrumental in helping out in that regard.

12

I think Senator Kruger has a distinguished record of service in this city.  He has no prior convictions.  He has substantial roots in the community and I think that the proposal that we both agreed to adequately addresses the issue.  And I would ask the Court to approve the package that we have represented.

THE COURT:  I'm going to release defendant in his own recognizance.  I believe those are the least restrictive bail conditions.  I'm going to require him to submit to the Government any travel documents he may possess, do not seek or obtain any new or replacement travel documents while this criminal action is pending.  What date would you like for preliminary hearing date?

MR. BRAFMAN:  I will waive 30 days, Your Honor.  And I have Mr. Kruger's passport which I will provide to the Government before we leave the courtroom today.

THE COURT:  Preliminary hearing date will be April 11.

MR. MCGORTY:  Your Honor, just one moment, please.

THE COURT:  Yes, sir.

MR. MCGORTY:  Your Honor --

THE COURT:  Yes.

MR. MCGORTY:  With respect to that ruling, Your Honor, we would ask you to respectfully stay your ruling so we can contemplate appealing it.

13

THE COURT:  No.

MR. BRAFMAN:  Can I ask what ruling, what stay or contemplating appealing?

MR. MCGORTY:  Your Honor, the ruling that the defendant be released on his own recognizance.

THE COURT:  If you wish to appeal it, you should proceed to the part one judge immediately.

MR. MCGORTY:  Thank you.

MR. BRAFMAN:  Can we -- we'll address that.  I have Mr. Kruger's passport here.  I'll hand it -- provide it to the Government.  What I would ask of the Government is that we have an opportunity to discuss the issue of bail.  After today -- he was not a flight risk yesterday; I don't think he becomes a flight risk today.  He came here today knowing how serious these charges are.

THE COURT:  Mr. Brafman, I have released your client into his own recognizance.  If you want to have discussions with the Government, feel free.  I want to move on to other defendants --

MR. BRAFMAN:  Yes, Your Honor.

THE COURT:  -- who may want to have their bail conditions discussed with the Court.

MR. BRAFMAN:  Thank you, Your Honor.  I just wanted to ask the Court [indiscernible].

THE COURT:  Let's turn to Mr. Lipsky.  What is the

14

Government's position on bail with respect to him?

MR. MCGORTY:  Your Honor, we have spoken with Mr. Lefcourt and we have a proposed package for Mr. Lipsky. It is that Mr. Lipsky be released on a one million-dollar personal recognizance bond co-signed by two financially responsible co-signers by March 18, routine Pretrial supervision, travel restricted to the state of New York and the districts of New Jersey and Connecticut, surrender of all travel documents, and no new applications.

THE COURT:  Mr. Lefcourt, is that recitation in harmony with your recollection of discussions with the Government?

MR. LEFCOURT:  Yes, Your Honor.

THE COURT:  Why do the parties believe these are the least restrictive bail conditions?

MR. MCGORTY:  Your Honor, again, based on the strength of the case, we believe that Mr. Lipsky is a risk of flight and a risk of nonappearance as set forth in the complaint.

THE COURT:  What in the complaint demonstrates that he is at risk to flee?

MR. MCGORTY:  Your Honor, the risk of nonappearance and I would add the difference between yesterday and today for all of the defendants, but in this case Mr. Lipsky, is the fact that now it has been revealed to these defendants

15

including Mr. Lipsky that the Government's case against them is based on four months of wiretaps.  In Mr. Lipsky's case, extensive review of bank records, extensive review of individuals who have been dealing with Mr. Lipsky, are aware that payments have gone through Mr. Lipsky to bribe Senator Kruger, bank records, false statements made by Mr. Lipsky when his partner was searched on Monday night, $106,000 in cash that was found in Mr. Lipsky's apartment Monday night.

We believe these are all factors that should be considered by the Court when deciding whether or not he's a risk of nonappearance.  We think the fact that now these defendants are aware of the case against them makes them far more a risk of flight than when they surrendered this morning at 8:30 a.m.

THE COURT:  Mr. Lefcourt, why do you and your client believe these are the least restrictive bail conditions?

MR. LEFCOURT:  Well, Your Honor, we have agreed to the Government's proposal, but I would point out that Mr. Lipsky has been a life-long New York res -- excuse me, resident, married to the same woman for 31 years, has raised two children, has run his own business for 30 years, and has never in any way violated any law or anything.  But under the circumstances, Your Honor, we went along with the Government's recommendation because he can have co-signers provide signatures to this bond.

16

MR. MCGORTY:  Your Honor, may I just have one point --

THE COURT:  Yes.

MR. MCGORTY:  -- I forgot to mention.  I would just add that Mr. Lipsky's guideline calculation by our estimate is 188 months to 235 months if he was convicted of the current charges.

THE COURT:  I'm going to release the defendant on his own recognizance.  He must surrender any travel documents he may possess to the Government, not seek or obtain any new or replacement travel documents while the criminal action is pending.  What date would you like for a preliminary hearing date?

MR. LEFCOURT:  We'd waive to the 30th day, Your Honor.

THE COURT:  April 11 will be the preliminary hearing date.

Mr. Kruger and Mr. Lipsky, with respect to Mr. Kruger I neglected to advise you.  Each of you must appear in court whenever you are directed to do so.  If you fail to do so, you expose yourself to having a warrant issued against you and expose yourself to a new charge in connection with your failure to appear in court, which would have a penalty that is independent of any penalty that might be imposed upon you should you be found guilty of the offense that is outlined

17

in the complaint.  Do each of you understand?

THE DEFENDANTS:  Yes.

THE COURT:  Let's turn to Mr. Molinsky.  What is the Government's position with respect to him?

MR. MCGORTY:  Yes, Your Honor.  We are seeking detention based on a risk of nonappearance -- I'm sorry.  We are seeking proposing a bail package that we figure will assure the defendants return to court.  We think that Mr. Molinsky is a risk of nonappearance.  Mr. Molinsky also has a particular means to flee based on information in the Pretrial Services report and available to the Government in its investigation.  And we believe that based on the strength of the case against Mr. Molinsky that he is a risk of nonappearance.  And we would propose a bail package commensurate with the one that we've proposed so far with the other defendants.

THE COURT:  All right.  Let me turn to Mister --

MR. MCGORTY:  But we have no agreement on that.

THE COURT:  Mr. Molinsky's counsel, what is your position on bail?

MR. FELDMAN:  Your Honor, we seek Mr. Molinsky's release on his own recognizance and that he surrender his travel documents.  We believe [indiscernible] to be released on such conditions and reasonably assure his appearance here [indiscernible] provide him on what [indiscernible].

18

THE COURT:  I'm prepared to hear whatever you want to tell me.

MR. FELDMAN:  Your Honor, Mr. Molinsky is not a risk of flight and not a danger to the community in any way.  He is a life-long member of this community and New York and New York State apart from a very short time that he spent in [indiscernible].  He has his family here.  His wife and two young children live here in Manhattan and one adult child in Hoboken.  He has a third child who lives in [indiscernible] college.  In addition, Mr. Molinsky who has two elderly parents who live in Florida and so his ties to the United States and to this community in particular are considerable. He has a family home here in Manhattan and a family home in Fire Island in this community.  Mr. Molinsky's business is here and his assets are here including real estate that he owns here in this community in this area.  He has some assets outside of New York State, but all within the United States. He has absolutely no assets overseas of any sort.

Mr. Molinsky has no criminal record of any kind.  To the contrary.  He's been vetted through the state government processes, such as the VENDEX reviews when he's been involved with Government contracts through his businesses.

Mr. Molinsky self-surrendered today.  The Government had the trust in him to come in and do that and that's exactly what he did.  Similarly, when the Government needed documents

19

from Mr. Molinsky's business, they did not execute a surprise search warrant.  They served him with a subpoena letting him voluntarily turn over documents.  That was earlier this week and that's exactly what we're going to do.

The case against Mr. Molinsky in fact is weak, Your Honor.  If you look at this, of the 53 pages, four of them deal with Mr. Molinsky.  What they show are business transactions.  Not secret transactions of cash, not hidden payments but checks, checks paid to people who were doing the work.  That's what Mr. Molinsky was doing.

The complaint doesn't show anything else.  The details of it are not a culpatory -- to get anything culpatory the Government has to make leaps to decide that there was suggestion in it that secret things going on.  There's just no details in this complaint that gets you there.

In addition, Mr. Molinsky's child, who is in college in Vermont, is a disabled young man who is legally blind who was born premature and he's had brain operations, had several operations on his legs.  Mr. Molinsky is not going to abandon his disabled child and flee out of this country.

Pretrial Services recommended an unsecured bond co-signed by Mr. Molinsky's wife.  The Government is seeking this bond for considerably more money.  We think Mr. Molinsky and we'd submit to Your Honor has a record of incredibly strong ties to this community and incredibly always abided by the

20

law.  He will show up to court anytime he's needed just as he showed up today, Your Honor.

THE COURT:  Mr. McGorty, did you want to be heard further?

MR. MCGORTY:  Just briefly, Your Honor.  I mean, we would rely -- I want to respond just specifically to one point of Mr. Feldman's, but I will say that we rely on the strength of the case.  We have a very different view than Mr. Feldman about the strength of the case.  I don't think the page allocation for Mr. Molinsky is really what we should go by when deciding if there's a really strong case against him.

He's been intercepted on telephone calls over the past four months.  He has been intercepted arranging -- and I use this word because Mr. Feldman used it -- "secret meetings" with Senator Kruger, several of which we have surveilled, one of which we have recorded at a diner in Brooklyn discussing while Mr. Feldman calls them legitimate business deals, they may be in part legitimate deals, but not when the senator is receiving money to actually assist in facilitating these business deals.

So we disagree that the four pages on Mr. Molinsky evidence a weak case.  Mr. Feldman also forgot about the fifth page, which is far earlier in the affidavit when we talk about the events of this week and Mr. Molinsky's cooperation with complying with spinner class [ph.] also involved Mr. Molinsky

21

denying knowing Mr. Kruger when asked about politicians that he interacts with.  He didn't recall that he knows Mr. Kruger as well.  However, he's also indicated that Senator Kruger is the closest of all his political allies despite what he had told the agents earlier.  That realization was only made after he noticed Mr. Kruger's name on the subpoena rider, which we had provided him.  Hold on one second.

THE COURT:  Sure.

MR. MCGORTY:  Correct.  To clarify -- Mr. Harrington is correct -- he was asked who he knew.  He named other individuals and did not indicate he knows Senator Kruger and did not recall knowing Senator Kruger until he interviewed the subpoena rider and saw that that was part of our investigation. So we disagree with Mr. Feldman's assessment.

We also believe again there's a difference between yesterday and today.  Now the case to some extent for these defendants -- to some limited extent is laid out in the complaint and now unlike yesterday, Mr. Molinsky is aware that he is looking at a guidelines calculation of 188 to 235 months if he is convicted.  We believe not that detention is appropriate, Your Honor.  We're not suggesting that.  We're suggesting that in light of Mr. Molinsky's assets, his ability to flee, and his assets are set forth in the Pretrial Services report and his resources, even if those resources are here in the United States and not outside of the United States, all,

22

Your Honor, we believe suggests that Your Honor should consider imposing some bail conditions, some personal recognizance bond with some dollar amount with co-signers that we believe under those circumstances he can be trusted to return to court.  So I think that's what we're seeking in this case.  We believe that his own recognizance is not the least conditions that will allow his return to court.  We believe a bail -- a bond is appropriate as we've suggested.

THE COURT:  Mr. Feldman --

MR. FELDMAN:  Well, just --

THE COURT:  -- did you want to be heard further?

MR. FELDMAN:  Yeah, just to quickly respond to this issue about the subpoena.  I think it demonstrates Mr. Molinsky is a law-abiding [indiscernible].  He got the subpoena.  He ran off a list of names off the top of his head.  He looked at the subpoena and he picked up the phone within 20 minutes and called the agent back to say, "I left something out."

THE COURT:  The defendant has strong ties to the community, no prior criminal history.  He's gainfully employed, has family ties to the community.  I do not believe that the fact that he is named in a complaint and may have assets suggests that he presents as a risk of flight.  The information in the Pretrial Services report suggests just the opposite.  I'm required by statute to impose the least

23

restrictive bail conditions and in this circumstance I think that releasing the defendant into his own recognizance is appropriate.  Therefore, that is what I shall do.  I will require the defendant to surrender any travel documents he may possess and not seek or obtain any new or replacement travel documents while this criminal action is pending.

Mr. Molinsky, you must appear in court whenever you are directed to do so.  If you fail to do so, a warrant may issue for your arrest, you may expose yourself to a new charge in connection with your failure to appear in court, which would have a penalty that is separate and apart from any penalty that might be imposed upon you should you be found guilty of the offense outlined in the complaint.  Do you understand, sir?

MR. MCGORTY:  Um-hum [ph.].

THE COURT:  What date would you like for a preliminary hearing date for your client, Mr. Feldman?

MR. FELDMAN:  We can waive that 30th day, Your Honor.

THE COURT:  April 11 will be the preliminary hearing date.

Let's turn to Mr. Kalish.  What is the Government's position on bail with respect to him?

MR. MCGORTY:  Your Honor, we would propose -- again, we would suggest, Your Honor, that a similar bail package is

24

appropriate.  Again, not getting into the details again, but based on the strength of the case, the potential penalties the defendants are facing, Mr. Kalish, we believe, some bail -- some bond is appropriate.

THE COURT:  Mr. Deluzio, what is your client's position on bail?

MR. DELUZIO:  Your Honor, my position is that I had agreed with the prosecutor in the packet that they have proposed.  However, Your Honor, I do believe that the Pretrial Services report would support, if Your Honor were so inclined, with the same sort of bail that you've established for the other defendants in this case.  I do not wish to engage in extensive argument because of the agreement I had with the prosecutor and will rely upon what I've just said.

THE COURT:  With respect to Mr. Kalish, I'm going to release him into his own recognizance.  I'm going to require that he surrender any weapons that he may possess to local law enforcement agency and present proof of that to the Government no later than Monday, the 14th day of March.

MR. DELUZIO:  Your Honor, if I might be so imprudent as to interrupt, there was also an understanding between myself and the Government that Mr. Kalish would be permitted to travel to Clearwater, Florida between March the 12th and March the 18th to take care of some issues concerning a condominium that he has down there.  This trip was previously

25

planned.

[Pause in the proceedings.]

THE COURT:  The bail conditions for Mr. Kalish are that he is to be released on his own recognizance.  He must surrender any firearms he may possess to local law enforcement officials and not possess a firearm while this criminal action is pending.  He must submit proof of the surrender of his firearms to the Government at the close of business March 14, 2011.  He must surrender any travel documents he may possess to the Government and not seek or obtain any new or replacement travel documents while this criminal action is pending.

Mr. Kalish, you must appear in court whenever you are directed to do so.  If you fail to do so, you may expose yourself to the issuance of a warrant for your arrest and you may expose yourself to a new charge in connection with your failure to appear in court, which would have a penalty independent of any penalty that might be imposed upon you should you be found guilty of the offense outlined in the complaint.  Do you understand, sir?

THE DEFENDANT:  Yes, I do, Your Honor.

THE COURT:  Mr. Deluzio, what date would you like for a preliminary hearing date?

MR. DELUZIO:  I, too, will waive 30-day period, Your Honor.

26

THE COURT:  April 11, 2011 will be the preliminary hearing date.

Let's turn to Mr. Aquino.  What is the Government's position on bail with respect to Mr. Aquino?

MR. MCGORTY:  Your Honor, the Government had discussed the package with defendant's counsel but for the purposes of Dr. Aquino and the rest of the defendants, the Government is obviously releasing defense counsel from any agreement we had.  We do think a bond of some amount is appropriate in this case based on the strength of the case and the risk of nonappearance.

THE COURT:  Ms. Shroff, what is your client's position on bail?

MS. SHROFF:  Your Honor, Ms. Passer is going to speak for [indiscernible].

THE COURT:  Very well.

MS. PASSER:  Your Honor, we did have that agreement with the Government along with the agreement that our client would report to Pretrial by phone rather than in person.  But I would just like to add for the record that my client, you know, is a life-long resident of New York.  He lives with his wife of 30 years.  His two children are in college and graduate school.  One of them lives with him.  He has severe medical problems.  He takes medication multiple times a day as well as monitors his blood sugar multiple times a day.  He's

27

not a risk of flight nor does he have the financial means. And this is not a presumption case, Your Honor.  And under the bail format we ask that the Court remove the restrictive bail package, if possible.

THE COURT:  Bail for Mr. Aquino as follows:  $50,000 recognizance bond to co-signed by one financially responsible person --

UNKNOWN SPEAKER:  Your Honor, I'm sorry to interrupt but there is no difference between any of the defendants.  If the Court is relying on the fact that he did not surrender when he, in fact, was arrested that was simply because they could not reach him at his phone because he is I think inability to answer it at a time when he was unwell.  There is really no distinction between him and any of the defendants of this court to release him on his own recognizance.

THE COURT:  The --

UNKNOWN SPEAKER:  In fact, he --

THE COURT:  -- defendant is in a different circumstance from other defendants who are before the Court, but I don't make bail determinations in a group fashion.  I make them individual -- based upon an individual assessment. I reviewed the Pretrial Services report.  There's information in there that suggests to me that the bail conditions that I'm about to announce are the least restrictive and appropriate.

For instance, defendant is not employed at the

28

present time.  There's information about his mental health status that I think needs to be addressed.  There are other factors revealed to the Pretrial Services report that place him in a different position than other defendants about whom I have spoken earlier this evening.

Regardless of the other defendants as I indicated, bail is fixed based upon an individual assessment of defendant, not because of his association with the group.

UNKNOWN SPEAKER:  Well, Your Honor, if I might just address the Court with the mental health -- the mental health situation that was described to the Pretrial Services Office, it was simply the fact that my client was depressed.  Given the fact that because of the economy he has been unemployed, has several medical problems, and he was arrested, he has every reason in the world to be depressed.  Were he not depressed, that would be a reason for mental health [indiscernible].

So with all due respect to the Court, I think that the mental health issue that has been flagged by Pretrial Services is not properly relayed to the Court.  Additionally, I'd like to --

THE COURT:  Was not properly what?

UNKNOWN SPEAKER:  What not properly laid out to the Court.  It's not that -- he has no mental health issues that would impact on either his dangerousness to the community nor

29

his return to the Court.  It's simply a matter of him being depressed.  I mean, a lot of people in this room are depressed and it does not go to either of the two issues, risk of flight or danger to the community.

More importantly, Your Honor, and I think the Government should speak to this issue if I am wrong, whenever my client was contacted by them and asked to come in for an interview he did so.  He did so without the assistance of counsel.  He made himself available and they talked to him or I would say interrogated him on more than one occasion.  He has no criminal history.  He's never been arrested in the past.  He has a wife and a sister in court today.  And for all those reasons, Your Honor, in fact, of all of these people he's the least likely because he doesn't have any money.  Even if he wanted to flee he would be unable to.  He simply has no money.  He has no money, no health.  And it's -- it seems like he shouldn't have that kind of bond.  I ask the Court to simply reconsider the bail you're about to render.  Thank you.

THE COURT:  You're welcome.  Does the Government want to be heard?

MR. MCGORTY:  I would just add that I would only -- I have to respond as I was asked to.  It's true that Mr. Aquino met with the Government before.  I take exception to the use of the word "interrogation."

(Laughter.)

30

You know, he's not been interrogated by me, although I did meet with him once before.  I also think that everything that happened before was before Dr. Aquino was charged with a crime and the package that I was proposing was higher than what Your Honor has suggested.

I will also add and agree with Ms. Shroff that it was our intent to let Dr. Aquino surrender today but that didn't happen, so -- but I gather that I don't believe that that was a key factor in Your Honor's analysis, but I thought I would clear that up and agree with that.  But I think a bond is appropriate for all the defendants, so obviously that includes Dr. Aquino.

[Pause in the proceedings.]

THE COURT:  Okay.  Bail for Mr. Aquino is as follows:  a $50,000 personal recognizance bond co-signed by one financially responsible person, must surrender any travel documents he may possess, does not seek or obtain any new or replacement travel documents while the criminal action is pending.  Travel is restricted to the Southern and Eastern Districts of New York.  Will be subject to regular Pretrial supervision, which will include a mental health evaluation and mental health treatment as deemed appropriate by the Pretrial Services office.

Mr. Aquino, you will be released this evening after you execute the bond.  Is there someone available to execute

31

the bond on behalf of Mr. Aquino this evening?

UNKNOWN SPEAKER:  Yes, we have somebody [indiscernible].

MS. PASSER:  We do, Your Honor, but we would like two weeks to opine and prepare the personal [indiscernible] and sign the document.

THE COURT:  Two weeks seems a bit long.  Is there some concern that you could make me privy to that would explain why such a long time would be needed?

MS. PASSER:  Your Honor, our client has [indiscernible].  We believe we can produce [indiscernible] also person.  At this point we just need to gather all the proper paperwork, which [indiscernible].

THE COURT:  All right.  What is the Government's position on that application?

MR. MCGORTY:  Your Honor, we don't object if two weeks is needed.  That's fine.

THE COURT:  All right.  Mr. Aquino, you'll have to satisfy all bail conditions by the close of business the 24th day of March 2011.  What date would you like for a preliminary hearing date for Mr. Aquino?

MS. PASSER:  We'll waive the 30th day.

THE COURT:  April 11 will be the preliminary hearing day.

Mr. Aquino, you must appear in court whenever you

32

are directed to do so.  If you fail to do so, you and any co-signer on your bond will be liable to the Government for the full amount of the bond.  A warrant may issue for your arrest and you may expose yourself to a new charge in connection with your failure to appear in court, which would have a penalty that is separate and apart from any penalty that might be imposed upon you should you be found to be guilty of the offense outlined in the complaint.  Do you understand, sir?

THE DEFENDANT:  Yes, Your Honor.

UNKNOWN SPEAKER:  Your Honor --

THE COURT:  Yes.

UNKNOWN SPEAKER:  [Indiscernible] medication.  We would ask that he be excused right now.

THE COURT:  Fine.

UNKNOWN SPEAKER:  Thank you.

THE COURT:  Let's turn to Mr. Rosen.  What is the Government's position on bail with respect to him?

MR. MCGORTY:  Your Honor, we believe that the defendant should be released pursuant to a bond co-signed by individuals and the other conditions I have set forth as for other defendants based on the strength of the case and the potential penalties that that person faces.

THE COURT:  Mr. Morvello, what is your client's position on bail?

MR. MORVELLO:  Your Honor, we accept the

33

recommendation of the Pretrial Services Department that my client be released on his own recognizance.  He is a life-long resident of New York.  He's lived in Westchester County for the last 35 years.  He's worked at Jamaica Hospital, a not-for-profit organization for the last 41 years.  He is married to the same woman for the last 39 years.  He has two daughters living in the area, three grandchildren living in the area, brothers and sisters.  He's known about this investigation for about two and a half years.  He did voluntarily surrender this morning.  He has absolutely no prior contact with the law and under those circumstances it seems to me that the least restrictive method would be to release him on his own recognizance.

With regard to the strength of the case, I believe strength is in the eyes of the beholder.  We do not view this case as a very strong case with respect to Mr. Rosen.

THE COURT:  Mr. McGorty, did you want to be heard further?

MR. MCGORTY:  No, we've nothing further, Your Honor.

THE COURT:  Very well.  I'm going to grant the application made by the defendant that he be released into his own recognizance and require that he surrender any travel documents he may possess to the Government and not seek or obtain any new or replacement travel documents while this criminal action is pending.

34

What date would you like for a preliminary hearing date?

MR. MORVELLO:  The earliest possible date, Your Honor.

THE COURT:  March 24 would be the preliminary hearing day -- I'm sorry, March 31.  Excuse me.  March 31 will be the preliminary hearing date.

MR. MORVELLO:  That's fine.

THE COURT:  Mr. Rosen, you must appear in court whenever you are directed to do so.  If you fail to do so, a warrant may issue for your arrest, you may expose yourself to a new charge in connection with your failure to appear in court which would have a penalty independent of any penalty that might be imposed upon you should you be found guilty of the defense outlined in the complaint.  Do you understand, sir?

THE DEFENDANT:  Yes, I do.

THE COURT:  Turning to Mr. Boyland, what is the Government's position on bail with respect to him?

MR. MCGORTY:  Your Honor, we do believe a similar bail that we've been proposing so far, package that we've been proposing so far is appropriate based on a risk of nonappearance on the strength of the case and ability to flee.

THE COURT:  Mr. Wilford, what is your client's position on bail?

35

MR. WILFORD:  Your Honor, our position is that Mr. Boyland should be released on his own recognizance for several reasons:  first and foremost, he's a 40-year-old life-long resident of New York who is a newly elected representative of the 55th Southern District of Brooklyn.  The complaint itself is what it is.  There's certain allegations in there, but there are no proof at this point.

And with respect to the strength of the case, Your Honor, a close examination of the complaint, I believe with respect to count number two, barely passes muster with respect to viability.  The Government appears to have conflated two different conspiracies with two different objects and simply charged people in that particular count, rather than specifically dealing with the allegations in the court separate and apart from having one named in the counts because some of the participants in each conspiracy are in that particular count.

The defendant, as I said, Your Honor, is a life-long resident of New York and was duly elected.  There is absolutely no risk of flight here at all.  I don't even think the Government would put forth any semblance of any danger to the community so, therefore, everything is satisfactory from being released on his own recognizance.

However, I do ask that Mr. Boyland have his travel not be restricted to any of the four districts of New York and

36

also being inclusive of the District of North Carolina where his father and mother reside.

Additionally, Your Honor, I understand that the Court has as part of its bail conditions indicated that defendants be required to turn over their travel documents. Mr. Boyland in his capacity in the assembly is sometimes required to travel and it impacts on his representation of people in the district in Brooklyn.

I would request that the Court not require Mr. Boyland to turn over all his -- his passport at this time and that his travel not be restricted so that he can continue to effectively represent the people in the 55th District.

THE COURT:  What kind of international travel and how frequently does the occasion arise that you're making reference to?

MR. WILFORD:  Yes, Your Honor.  Most recently in October of 2010 Mr. Boyland traveled to Turkey in an effort to assemble district [ph.] to deal with improvement of multi-relations and with the United States, specifically the State of New York.  Prior to that, in 2006 he traveled to Beijing in an effort to increase business opportunities for the residents of New York.  Those -- although they don't occur frequently, Your Honor, I think that stripping him of the ability to participate in travel specifically related to assembly business not to be restrictive of bail condition available and

37

that's why I suggested to the Court that his travel documents should not be surrendered.

THE COURT:  Mr. McGorty, do you want to be heard?

MR. MCGORTY:  Only to add, Your Honor, we would object to Assemblyman Boyland not surrendering his passport and any other travel documents and no additional applications. What we would suggest, if the need arises for Assemblyman Boyland to travel to Turkey or anywhere else outside of the country in the near future he can make an application to the Court on that occasion and we could revisit it on a case-by-case basis.  Since it is not part and parcel to his job and I would have an objection if it was, but since it is not, we believe that he should surrender his passport and make an application if the need arises and depending on the need Your Honor could reconsider that ruling.

THE COURT:  Mr. Wilford, do you want to be heard further?

MR. WILFORD:  Oh, no, Your Honor.  I think the record is clear.

THE COURT:  I'm going to release Mr. Boyland to his own recognizance.  I'm going to require Mr. Boyland to surrender any travel documents he may possess and not seek to obtain any new replacement travel documents while the criminal action is pending.

If Mr. Boyland needs to travel outside the United

38

States in connection with his official duties, he can make an application to the Court.  I would imagine -- an application to the Court to permit him to make such travel -- I would imagine that he would have advance notice if he's going to have to travel outside of the country and that would give him an opportunity to come to the Court, present his circumstances, allow the Government to weigh in with the Court and then a determination could be made to whether he should be permitted to leave the country in connection with his work.

What date would you like for a preliminary hearing date?

MR. WILFORD:  Your Honor, we waive April 11th.

THE COURT:  April 11, 2011 will be the preliminary hearing date.

Mr. Boyland, you must appear in court whenever you are directed to do so.  If you fail to do so, a warrant may issue for your arrest.  You may expose yourself to a new charge in connection with your failure to appear in court which would have a penalty that is separate and apart from any penalty that might be imposed upon you should you be found guilty to the offense outlined in the complaint.  Do you understand, sir?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Let's turn to Mr. Turano.  What is the Government's position on bail with respect to him?

39

MR. MCGORTY:  Your Honor, we think a bail similar to the one we've proposed so far is appropriate in this case based on the strength of the evidence, the defendant's risk of nonappearance, and specifically with the defendant and defendant's ability and means to flee.

Mr. Katzberg, what is your client's position then?

MR. KATZBERG:  Yes, Your Honor.  We would urge the Court to adopt recommendation of Pretrial Services that he be released on his own recognizance.  Your Honor, he's a medical doctor, Your Honor.  He is a life-long resident of the City of New York.  He owns his own home, the home he has lived in for the last ten years.  He has a medical practice with two separate offices here in New York City.  He has no prior record.  He has voluntarily surrendered this morning and I have, let the record reflect, already provided his passport to the Government.  And so we would respectfully urge the Court to follow the recommendations of Pretrial and release him on his own recognizance.

THE COURT:  I'm going to release the defendant into his own recognizance.

Sir, since you have already surrendered your trial docs to the Government you should not seek or obtain any new or replacement travel documents while this action is pending. Your travel documents will remain with the Government while the criminal action is pending.  You must appear in court

40

whenever you are directed to do so.  If you fail to do so, a warrant may issue for your arrest and you may expose yourself to a new charge in connection with your failure to appear in court which would have a penalty that's independent of any penalty that might be imposed upon you should you be found guilty of the offense described in the complaint.  Do you understand, sir?

THE DEFENDANT:  Yes, I do.

THE COURT:  What date would you like for a preliminary hearing date, Mr. Katzberg?

MR. KATZBERG:  Your Honor, we would waive to the 30th day.

THE COURT:  April 11 will be the preliminary hearing date.

Is there anything else that we need to address?

PARTIES:  No, Your Honor.

MR. MCGORTY:  Not from the Government.

THE COURT:  Thank you.

UNKNOWN SPEAKER:  Thank you.

* * * * * *

41

I certify that the foregoing is a court transcript from an electronic sound recording of the proceedings in the above-entitled matter.

_____

Ruth Ann Hager, C.E.T.**D-641

Dated:  June 4, 2013